1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

11   SERENA MEDINA,                          No.  2:19-CV-1543-DMC
12                    Plaintiff,
13          v.                               MEMORANDUM OPINION AND ORDER
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial
19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).
20   Pursuant to the written consent of all parties, ECF Nos. 8 and 15, this case is before the
21   undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28
22   U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 16 and
23   20.
24          The Court reviews the Commissioner's final decision to determine whether it is:
25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a
26   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is
27   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521
28   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

                                        1

1   a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971). The record as a whole,

2   including both the evidence that supports and detracts from the Commissioner's conclusion, must

3   be considered and weighed. <u>See Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones</u>

4   <u>v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's

5   decision simply by isolating a specific quantum of supporting evidence. <u>See Hammock v.</u>

6   <u>Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative

7   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8   Commissioner is conclusive. <u>See Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, <u>see Thomas v.</u>

11  <u>Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, <u>see Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14            For the reasons discussed below, the matter will be remanded for further

15  proceedings.

16

17            **I.  THE DISABILITY EVALUATION PROCESS**

18            To achieve uniformity of decisions, the Commissioner employs a five-step

19  sequential evaluation process to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. §§

20  404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

21            Step 1        Determination whether the claimant is engaged in
22                          substantial gainful activity; if so, the claimant is presumed
                            not disabled and the claim is denied;

23            Step 2        If the claimant is not engaged in substantial gainful activity,
24                          determination whether the claimant has a severe
                            impairment; if not, the claimant is presumed not disabled
25                          and the claim is denied;

26            Step 3        If the claimant has one or more severe impairments,
                            determination whether any such severe impairment meets
27                          or medically equals an impairment listed in the regulations;
                            if the claimant has such an impairment, the claimant is
                            presumed disabled and the claim is granted;

28

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

1

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on April 28, 2016.  See CAR 15.[1]  In the application, Plaintiff claims disability began on March 27, 2015.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on March 6, 2018, before Administrative Law Judge (ALJ) Jane M. Maccione.  In an August 21, 2018, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): seronegative rheumatoid arthritis, fibromyalgia, degenerative disc disease of the lumbar spine, and obesity;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work; the claimant requires a sit-stand option, alternating every 30 minutes without time off task; she is limited to occasional climbing of ramps and stairs; she cannot climb ropes, ladders, or scaffolds; she is limited to occasional balancing, stooping, kneeling, crouching, and crawling; she is limited to frequent fingering and handling with her bilateral upper extremities; the claimant must avoid concentrated exposure to vibration and concentrated exposure to extremes of heat or cold; she must be protected from workplace hazards, such as unprotected heights and dangerous moving mechanical parts;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform her past relevant work as a cashier; alternatively, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 17-29.

After the Appeals Council declined review on June 12, 2019, this appeal followed.

/ / /

/ / /

/ / /

/ / /

---

[1]  Citations are the to the Certified Administrative Record (CAR) lodged on December 9, 2019, ECF No. 12.

### III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred at Step 3 in failing to find Plaintiff's impairments satisfy Listing 14.09; (2) the ALJ improperly rejected Plaintiff's statements and testimony as not credible at Step 4; (3) the ALJ failed to properly evaluate the medical opinions at Step 4; (4) the ALJ failed to properly explain the residual functional capacity finding at Step 4; and (5) the ALJ's finding at Step 5 is not based on substantial evidence.

#### A.   Listing 14.09

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

At Step 3, the ALJ determined whether any of the severe impairments identified at Step 2 meet or medically equal an impairment listed in the regulations.  See CAR 19-21.  The ALJ specifically addressed Listing 14.09 governing inflammatory arthritis:

> The claimant's impairments do not meet the criteria for listing 14.09. There is no evidence in the objective medical record that the claimant has an inability to ambulate effectively or an inability to perform fine and gross movements effectively under Listing 14.09A.  As discussed further below, while the claimant was prescribed a walker, it was at her request, and her physical examinations were normal with normal range of motion with only one mention of an antalgic gait, and there was normal gait at the consultative examination.  There is no evidence of an involvement of two or more organs/body systems to a moderate level of severity, nor any symptoms of severe fatigue, fever, malaise, or involuntary weight loss under listing 14.09B.  There is no evidence of ankylosing spondylitis or other spondyloarthropathies with ankylosis of the dorsolumbar or cervical spine to the extent required under listing 14.09C.  Finally, the claimant's impairments do not meet the criterial for listing 14.09D, because there are no symptoms of severe fatigue, fever, malaise, or involuntary weight loss combined with marked limitation of activities of daily living, marked limitation in maintaining social functioning, or marked limitation in

/ / /

/ / /

5

1    completing tasks in a timely manner due to deficiencies in concentration,
     persistence, or pace.  Consequently, the claimant's impairments do not
2    meet or equal listing 14.09.

3    Id. at 20.

4    According to Plaintiff:

5         Keeping in mind that the reasonable reading of the evidence is that
     Ms. Medina's FMS [fibromyalgia syndrome] is primary to her rheumatoid
6    arthritis, that means application of listing 14.09, inflammatory arthritis,
     would involve *equivalency* (see 20 C.F.R. §416.926), not *meeting* it. The
7    decision's negative step-three finding should also be reversed because it
     merely intones that listing in a negative key, asserting without explanation
8    that its criteria aren't present. But we've just seen that Ms. Medina's
     doctors ***do*** say she has fatigue, fever, and malaise; the decision gets this
9    exactly wrong; and there is nothing clearly correct about its unexplained
     assertion that Ms. Medina's activities of daily living and ability to
10   complete tasks in a timely manner due to deficiencies in concentration,
     persistence, or pace are not markedly limited. (See listing 14.09D.)
11
     ECF No. 16, pg. 15.
12

13        Plaintiff's arguments are unpersuasive.  At the outset, the Court rejects Plaintiff's

14   suggestion that the ALJ failed to engage in an equivalency analysis.  The ALJ specifically found

15   that Plaintiff's impairments to not meet or equal Listing 14.09.  See CAR 20.  The Court also

16   disagrees that the ALJ fails to explain why the criteria of the listing are not met.  Again, the

17   hearing decision reflects that, for each of the A through D paragraphs of Listing 14.09, the ALJ

18   explained that each criterion was not met due to a lack of relevant objective findings.

19        While Plaintiff's doctors said that Plaintiff has "fatigue, fever, and malaise,"

20   paragraph B requires evidence of severe fatigue, fever, or malaise, as well as involvement of two

21   or more organs or body systems with one organ or body system involved to at least a moderate

22   degree.  See Listing 14.09B.  Likewise, paragraph D requires severe fatigue, fever, or malaise as

23   well as a marked limitation in activities of daily living, or a marked limitation in maintaining

24   social functioning, or a marked limitation in completing tasks in a timely manner.  See Listing

25   14.09D.  Plaintiff has not pointed to evidence of severe fatigue, fever, or malaise.  Nor has

26   Plaintiff cited to evidence of record establishing the other requirements of paragraphs B and D,

27   such as involvement of two or more body systems or organs, marked limitation in activities of

28   daily living, or marked limitation in the ability to complete tasks in a timely manner.

1

    **B.**    <u>**Credibility**</u>

2             The Commissioner determines whether a disability applicant is credible, and the

3 court defers to the Commissioner's discretion if the Commissioner used the proper process and

4 provided proper reasons.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

5 credibility finding must be supported by specific, cogent reasons.  <u>See</u> <u>Rashad v. Sullivan</u>, 903

6 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d

7 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

8 and what evidence undermines the testimony.  <u>See</u> <u>id.</u>  Moreover, unless there is affirmative

9 evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

10 credible must be "clear and convincing."  <u>See</u> <u>id.</u>; <u>see also</u> <u>Carmickle v. Commissioner</u>, 533 F.3d

11 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007),

12 and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

13             If there is objective medical evidence of an underlying impairment, the

14 Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

15 because they are unsupported by objective medical evidence.  <u>See</u> <u>Bunnell v. Sullivan</u>, 947 F.2d

16 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

17
18
19
20
> The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof.  Nor must the claimant produce
> objective medical evidence of the causal relationship between the
> medically determinable impairment and the symptom.  By requiring that
> the medical impairment "could reasonably be expected to produce" pain or
> another symptom, the <u>Cotton</u> test requires only that the causal relationship
> be a reasonable inference, not a medically proven phenomenon.

21
22
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
> <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

23             The Commissioner may, however, consider the nature of the symptoms alleged,

24 including aggravating factors, medication, treatment, and functional restrictions.  <u>See</u> <u>Bunnell</u>,

25 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

26 claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

27 testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

28 prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").   Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

/ / /

/ / /

/ / /

As Step 4, the ALJ evaluated the credibility of Plaintiff's statements and testimony.  See CAR 21-27.  The ALJ began by summarizing Plaintiff's statements and testimony as follows

> The claimant alleged disability due to rheumatoid arthritis, fibromyalgia, and chronic back pain (Ex. 3E/2).  The claimant testified that she had swelling and pain in all of the joints, and she soaked in hot water for 30 to 40 minutes.  The claimant indicates that she was going to get an injection in the spine and epidural to see what is wrong.  She claimed that Humira was not working, and neither did Methotrexate, but she noted that her doctor wanted to continue injections for three months to give it time to work.  The claimant states that she would get dizziness and nausea from medications a couple of hours after she took her medications, which then wore off but came back on and off throughout the day, and she had dry mouth.  The claimant cried at the beginning of the hearing and whimpered throughout the hearing (Hearing).
>
> With regard to activities of daily living, the claimant testified that her daughter did the laundry and cleaning, and her daughter and husband shopped for groceries.  The claimant reported that she needed help dressing from her husband, and her daughter helped her wash her hair occasionally.  She acknowledged that she occasionally drove (Hearing).  The claimant previously reported in June 2016 that she tried to clean her house and grocery shop with her mother or husband for assistance and was limited because of chronic pain and swelling (Ex. 6E).  The claimant indicated that she could sometimes sweep and wash dishes but not very often and with rest breaks, and her husband and children did mopping and dusting.  She further indicated that she lifted some pots and pans, but she was limited in lifting.  She said that she could carry light grocery bags.  The claimant said that she drove to take her children to school and pick them up about 15 minutes at one time.

CAR 21-22.

The ALJ then provided an extensive summary of the longitudinal medical history, starting in 2015 and continuing through 2018.  See id. at 22-25.  Regarding this evidence, the ALJ stated:

> Turning to the medical evidence, the medical evidence of record does not support the persuasiveness of the claimant's allegations regarding her impairments.  The claimant's subjective reported history cannot substitute for the objective medical evidence contained in the record, which provides a more accurate longitudinal history of the claimant's conditions and demonstrates that her conditions are not disabling.  The objective findings fail to provide strong support for the claimant's allegations of disabling symptoms and limitations.  According to the medical records exhibited, the claimant has seronegative rheumatoid arthritis, fibromyalgia, degenerative disc disease of the lumbar spine, and obesity (See, e.g., Exs. 5F, 12F, 17F, 19F).  Generally, the claimant's physical examinations. . .

/ / /

1    mostly show full range of motion, no edema, and no tenderness in her
     extremities, and the claimant denied joint or back pain.
2

3    CAR 22.

4    Next, the ALJ discussed Plaintiff's daily activities:

5    Equally important, the claimant's daily activities also demonstrate that she
     is not disabled.  The claimant has described daily activities, which are not
6    limited to the extent one would expect, given the complaints of disabling
     symptoms and limitations.  During her mental consultative examination in
7    2016, the claimant reported that she spent time with family once per week,
     which she organized (Ex. 6F).  The claimant noted having acquaintances
8    and socializing with her sisters.  She said that she liked the [sic] read the
     Bible and spiritual books, listened to music, and wrote in a diary.  With
9    regard to activities of daily living, the claimant reported to the consultative
     examiner that she was independent in all areas of functioning, except
10   when there are specific physical activities such as standing for long,
     lifting, or being able to raise her arms.  She stated that she did activities
11   with family, she was independent in many ways, but she never went by
     herself to grocery shop.  She noted that she did physical tasks such as
12   lifting and carrying laundry, either incrementally in smaller loads or in
     smaller steps.  The claimant admitted that she managed her finances
13   without any problems.  She said she could attend to outside activities, both
     with family and friends.  She acknowledged that she occasionally drove
14   (Hearing).  The claimant previously reported in June 2016 that she tried to
     clean her house and grocery shop with her mother or husband for
15   assistance and was limited because of chronic pain and swelling (Ex. 6E).
     The claimant indicated that she could sometimes sweep and wash dishes
16   but not very often and with rest breaks, and her husband and children did
     mopping and dusting.  She further indicated that she lifted some pots and
17   pans, but she was limited in lifting.  She said that she could carry light
     grocery bags.  The claimant said that she drove to take her children to
18   school and pick them up about 15 minutes at one time.  These activities
     reflect that the claimant has a wide range of daily activities, and her
19   conditions are not disabling.  These activities showed she could do at least
     less than a full range of light work with a sit-stand option and postural,
20   manipulative, and environmental limitations.

21   CAR 25-26.

22   The ALJ concluded as follows:

23   In sum, the above residual functional capacity assessment is supported by
     the objective medical evidence contained in the record and the claimant's
24   activities of daily living.  The medical records in evidence do not sustain
     the claimant's allegations of disabling conditions.  More specifically, the
25   medical findings do not support the existence of limitations greater than
     the above listed residual functional capacity.  The persuasiveness of the
26   claimant's allegations is weakened by inconsistencies between her
     allegations, her statements regarding daily activities, and the medical
27   evidence noted above. . . .

28   CAR 27.

10

1    Plaintiff contends: "Here, the decision never connects any of its out-takes from the

2  medical record to any allegations, as somehow inconsistent."  ECF No. 16, pg. 11.  Plaintiff also

3  asserts the ALJ improperly relied on daily activities.  See id.  Finally, Plaintiff argues, despite the

4  ALJ's reference to "inconsistencies between her allegations," no such inconsistencies are

5  identified in the hearing decision.  Id. at 12.

6            1.      Inconsistencies

7    Plaintiff contends the ALJ erred by citing "inconsistencies between her

8  allegations" because Plaintiff's allegations have been consistent.  ECF No. 16, pg. 12 (citing CAR

9  27).  According to Plaintiff: "Never before this does the decision identify any such

10  'inconsistencies between her allegations'. . . ."  Id.  The Court agrees because the various

11  statements made by Plaintiff which the ALJ references are largely consistent.

12            The ALJ first outlines Plaintiff's statements, including those relating to her daily

13  activities, made in the context of her application and at the administrative hearing.  See CAR 21-

14  22.  The ALJ also discussed Plaintiff's statements regarding her daily activities made to various

15  healthcare providers.  See id. at 25-26.  Thus, the ALJ's conclusion regarding inconsistent

16  statements must be based on a comparison of statements made in connection with the application

17  and those made to healthcare providers.

18            The Court finds the ALJ's conclusion is not based on substantial evidence because,

19  contrary to the ALJ's assessment, Plaintiff's statements regarding daily activities made in

20  connection with the application are largely consistent with those made to healthcare providers.  In

21  the context of her application and at the hearing, Plaintiff described fairly restricted activities of

22  daily living.  Citing Exhibit 6E (Plaintiff's written statement of symptoms and limitations) and

23  Plaintiff's hearing testimony, the ALJ noted that Plaintiff states she needs help from her family

24  doing almost every activity of daily living.  See CAR 21-22.  Similarly, citing Exhibit 6F (report

25  of a 2016 consultative examination), the ALJ noted that Plaintiff reported to healthcare providers

26  a need for assistance from family members for many tasks, such as grocery shopping, lifting,

27  carrying, and cleaning.  See id. at 25-26.

28  / / /

11

1          2.       Daily Activities

2                  Plaintiff also argues the ALJ erred by citing daily activities.  As discussed above,

3    the ALJ describes fairly limited daily activities, both as reported by Plaintiff in connection with

4    the application and to healthcare providers.  For example, Plaintiff states she needs frequent

5    assistance from her husband and daughter for even simple tasks like dressing.  Plaintiff has

6    consistently stated that she cannot shop alone due to pain.  She has also consistently stated that

7    she has difficulty lifting and carrying light items.  Plaintiff states she only drives for very short

8    15-minute trips.  For an ALJ to properly rely solely on activities of daily living to discount a

9    claimant's allegations of disabling symptoms and limitations, such activities must show an ability

10   to engage in competitive work.  See Fair, 885 F.2d at 603.  Here, the activities of daily living

11   cited by the ALJ do not do so.

12          3.       Objective Medical Evidence

13                 Plaintiff contends the ALJ failed to link the various objective findings cited to any

14   specific statement found not credible.  The Court agrees.  Here, the ALJ first summarized

15   Plaintiff's statements and testimony.  See CAR 21-22.  The ALJ next outlined the longitudinal

16   history of objective medical findings from 2015 to 2018.  See id. at 22-25.  To connect the two,

17   the ALJ merely states: "Turning the medical evidence, the medical evidence of record does not

18   support the persuasiveness of the claimant's allegations regarding her impairments."  Id. at 22.

19   The ALJ does not discuss any of the objective findings outlined in the hearing decision in the

20   context of any particular statement found not credible.[2]

21   / / /

22   / / /

23   / / /

24   / / /

25   **C.      Medical Opinions**

26          [2]     Often, the ALJ provides valid reasons, other than inconsistency, with the objective
     evidence to support an adverse credibility finding.  In such cases, the Court would not find error
27   in an adverse credibility finding as a whole.  Here, however, the other reasons provided by the
     ALJ – inconsistent statement and Plaintiff's daily activities – are not valid reasons.  Thus, the
28   Court is left with only a conclusory analysis of the objective evidence, which is insufficient.

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

1    opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

2    Cir. 1990).

3                    In addition to considering its source, to evaluate whether the Commissioner

4    properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

5    the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

6    uncontradicted opinion of a treating or examining medical professional only for "clear and

7    convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

8    While a treating professional's opinion generally is accorded superior weight, if it is contradicted

9    by an examining professional's opinion which is supported by different independent clinical

10   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

11   1041 (9th Cir. 1995).

12                   A contradicted opinion of a treating or examining professional may be rejected

13   only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

14   at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

15   facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

16   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

17   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

18   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

19   without other evidence, is insufficient to reject the opinion of a treating or examining

20   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

21   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

22   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

23   also Magallanes, 881 F.2d at 751.

24                   At Step 4, the ALJ considered the medical opinion evidence in determining

25   Plaintiff's residual functional capacity.  See CAR 26-27.  The ALJ gave little weight to the

26   agency medical consultants' opinions to the extent they found Plaintiff's fibromyalgia to be a

27   non-severe impairment.  See id. at 26.  The ALJ also gave little weight to the opinion of Dr.

28   Francisco.  See id.  The ALJ gave no weight to the opinion of Dr. Askew.  See id. at 27.  The ALJ

1   also gave little weight to the opinion of Dr. Chalal.  See id.

2           Plaintiff contends the ALJ erred by failing to give greater weight to the opinions of

3   Drs. Chalal, Askew, and Francisco, all of whom are treating sources.  See ECF No. 16, pgs. 12-

4   15.

5           1.      Dr. Chalal

6           As to Dr. Chalal, the ALJ stated:

7           The undersigned directs little weight to the medical source statement of
            Dr. Chalal, who opined in 2018 that the claimant was limited to less than a
8           full range of sedentary work with postural, manipulative (occasional
            reaching, handling, fingering, and feeling), and environmental limitations
9           due to an unsteady gait and a walker was medically necessary (Ex. 16F).
            Such opinion is not consistent with []his own most recent treatment
10          records, which show that the claimant is being managed on medications,
            and her physical examinations were largely normal with full range of
11          motion throughout (Exs. 12F, 17F). . . .

12          CAR 27.

13          Dr. Chalal's source statement is contained in the record at Exhibit 16F.  See CAR

14   674-75.  Dr. Chalal cited an "unsteady gait" as the basis for the opinion that Plaintiff is limited to

15   lifting and carrying less than 10 pounds frequently or occasionally.  See id. at 674.  Dr. Chalal

16   cited fatigue, unsteady gait, and muscle weakness to support the conclusion that Plaintiff can

17   stand and walk less than two hours in an 8-hour workday.  See id.  The doctor also opined that

18   Plaintiff requires the use of a walker.  See id.  The doctor assessed limitations to Plaintiff's ability

19   to climb, balance, stoop, kneel, crouch, and crawl based on Plaintiff's arthritis and fibromyalgia

20   impairments.  See id. at 675.

21          Plaintiff argues that the ALJ's conclusion that Plaintiff "is being managed on

22   medications" does not necessarily undermine Dr. Chalal's conclusions and is, therefore, an

23   improper rationale.  See ECF No. 16, pg. 14.  The Court agrees. "Being managed" is not the same

24   as "under control" or "well-controlled" with medication.  It is possible that Plaintiff's pain is

25   disabling, cannot be improved, but is being managed at the current level with medication.  A

26   disabling symptom does not become non-disabling simply because it is being managed at a

27   disabling level.  To the extent Dr. Chalal's finding was ambiguous or unclear, the ALJ should

28   have further developed the record.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.

15

1     2001).

2              Nonetheless, the Court finds no error with the ALJ's overall assessment of Dr.

3     Chalal's source statement.  As the ALJ correctly noted, the chart notes at Exhibits 12F and 17F

4     which accompany Dr. Chalal's statement reveal a stark lack of objective findings which would

5     support the doctor's rather limited assessment.  <u>See</u> CAR 641-69 (Exhibit 12F); 676-93 (Exhibit

6     17F).  The following is a summary of Dr. Chalal's objective findings:

7              April 26, 2017              Normal findings except swelling of the knee and
                                           ankles was noted.  <u>See</u> <u>id.</u> at 659.
8
               June 11, 2017              No abnormal findings.  <u>See</u> <u>id.</u> at 657.
9
               September 19, 2017        No abnormal findings.  <u>See</u> <u>id.</u> at 650.
10
               November 1, 2017          No abnormal findings.  <u>See</u> <u>id.</u> at 643.
11
               January 26, 2018          No abnormal findings.  <u>See</u> <u>id.</u> at 677.
12

13    One instance of observed swelling of Plaintiff's knee and ankles in April 2017, which was not

14    noted on any subsequent examination, simply cannot support the doctor's opinions.  On this

15    record, the ALJ did not err.  <u>See</u> <u>Meanel</u>, 172 F.3d at 1113; <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751.

16              2.      <u>Dr. Askew</u>

17              As to Dr. Askew, the ALJ stated:

18       The undersigned directs no weight to the medical source statement of Dr.
         Askew, as it was a medical examination and no specific functional
19       limitations were given to weigh (Ex. 15F).  Dr. Askew appears to be a
         pain specialist who only saw the claimant once.
20
         CAR 27.
21

22              According to Plaintiff:

23              [The ALJ] gave "no weight" to Dr. Askew because "it was a
         medical examination and no specific functional limitations were given to
24       weigh. Dr. Askew appears to be a pain specialist who only saw the
         claimant once." (<i>Id.</i>) Actually, Dr. Askew's chart <i>does</i> contain functional
25       limitations, though these seem to be Ms. Medina's reports within Dr.
         Askew's history-taking (transc., p.671); however, these have value
26       because they corroborate the testimony of Ms. Askew the decision
         devalued. But medical opinions are more than expressions of functional
27       limitations; "[m]edical opinions are statements from acceptable medical
         sources that reflect judgments about the nature and severity of your
28       impairment(s), including your symptoms, diagnosis and prognosis, what

                                                 16

you can still do despite impairment(s), and your physical or mental restrictions." (20 C.F.R. §416.927(a)(1)) Further corroborating Ms. Medina's testimony is Dr. Askew's recording of her *symptoms*, which puts to shame the selected normal findings the decision uses against her. (Footnote omitted). More to the point, Dr. Askew's exam turned up *multiple* positive *objective* findings, further putting to shame those normal findings. (footnote omitted).  And Dr. Askew's recommendation of lumbar medial branch block and epidural steroid injections, diagnostic sacroiliac injections, and trochanteric injections *imply* functional limitations because they reflect "judgments about the nature and severity of [Ms. Medina's] impairments, including [her] symptoms, diagnosis and prognosis" — they reflect on "what she can still do," especially in light of Dr. Askew's multiple objective findings and his recordation of *Ms. Medina's* subjective complaints *and limitations.* Dr. Askew may have only seen Ms. Medina once, which is certainly a factor under 20 C.F.R. § 416.927(c)(2), but his one report on her is a treasure trove of highly relevant material, which contradicts the decision's RFC and its apparent basis in recital of irrelevant normal findings.

ECF No. 16, pgs. 12-13.

Dr. Askew's report is contained in the record at Exhibit 15F.  <u>See</u> CAR 670-673. The exhibit reflects a single treatment date – January 15, 2018.  <u>See id.</u> at 670.  Dr. Askew did not opine as to any functional limitations or capabilities.  While Plaintiff's somewhat rambling argument, which encourages the Court to ignore "irrelevant normal findings," notes various objective findings recorded by Dr. Askew, Plaintiff does not actually contest the ALJ's conclusion that Dr. Askew did not actually provide any opinions.  Nor can she because the doctor did not.

        3.   <u>Dr. Francisco</u>

As to Dr. Francisco, the ALJ stated:

The undersigned directs little weight to Dr. Francisco's medical source statement in 2018 limiting the claimant to less than a full range of sedentary work and requiring a walker, not for medical reasons but to assist with activities of daily living, with frequent reaching, no handling or fingering, and occasional feeling, as well as postural limitations (never) and vague environmental limitations (Ex. 14F).  Dr. Francisco gave the claimant a walker when she asked for one, and Dr. Francisco's findings and the other findings noted above do not support that she was limited to less than a full range of sedentary work with such extensive manipulative limitations and use of a walker.  While she cited the claimant's MRI, which merely showed disc bulge, and the claimant's symptoms, there was no further explanation, and the same explanation was given for all restrictions.  Furthermore, she limited sitting to less than six hours but [was] vague as to how much.  "Other" was checked in environmental without any explanation of what it meant.  The opinion is not consistent

17

1    with the treatment records, which show that the care plan is diet and
     exercise and keep taking medications and seeing other doctors.
2    Furthermore, the claimant saw this doctor every three months and denied
     back and joint pain on February 6, 2017 (Ex. 18F/2).  The longitudinal
3    medical evidence set forth above supports that the claimant was less
     limited to less than a full range of light work with a sit-stand option and
4    postural, manipulative, and environmental limitations.

5         CAR 26-27.

6              Dr. Francisco's medical source statement is contained in the record at Exhibit 14F.

7    See CAR 668-69.  The opinions presented are largely the same as those provided by Dr. Chalal.

8    See id.  Dr. Francisco's chart notes are contained in the record at Exhibit 18F.  See id. at 694-706.

9    The following summarizes the objective findings made by Dr. Francisco:

10        February 6, 2017          No abnormal findings.  See id. at 705.

11        March 16, 2017            No abnormal findings.  See id. at 700.

12        October 17, 2017          No abnormal findings.  See id. at 698.

13        January 10, 2018          No abnormal findings.  See id. at 695.

14   As with Dr. Chalal, the ALJ did not err by giving little weight to Dr. Francisco's unsupported

15   opinions.  See Meanel, 172 F.3d at 1113; see also Magallanes, 881 F.2d at 751.

16        **D.     Residual Functional Capacity and Vocational Findings**

17             Plaintiff argues, for the various reasons discussed herein, that the ALJ's overall

18   residual functional capacity finding is "reversibly insufficiently, inadequately, and unreviewably

19   unexplained."  ECF No. 16, pg. 6.  Plaintiff also argues that the ALJ's vocational findings at Step

20   5 should be reversed because the ALJ relied on vocational expert testimony in response to

21   hypothetical questions which did not fully describe Plaintiff's limitations.  See id. at 16.  Because

22   the Court has found the ALJ's analysis of Plaintiff's statements and testimony at Step 4 warrants

23   a remand, the Court does not reach these final arguments.  On remand, when properly accounting

24   for Plaintiff's statements and testimony, it is entirely possible the entire residual functional

25   capacity analysis will be different.  Similarly, to the extent the agency reaches a different residual

26   functional capacity determination on remand, a different set of hypothetical questions will need to

27   be addressed at Step 5.  Resolving Plaintiff's arguments now would be of no help to the parties.

28   / / /

1

## IV.  CONCLUSION

2          For the foregoing reasons, this matter will be remanded under sentence four of 42

3   U.S.C. § 405(g) for further development of the record and/or further findings addressing the

4   deficiencies noted above.

5          Accordingly, IT IS HEREBY ORDERED that:

6          1.      Plaintiff's motion for summary judgment, ECF No. 16, is granted;

7          2.      Defendant's motion for summary judgment, ECF No. 20, is denied;

8          3.      The Commissioner's final decision is reversed and this matter is remanded

9   for further proceedings consistent with this order; and

10          4.      The Clerk of the Court is directed to enter judgment and close this file.

11

12   Dated:  March 30, 2021

13                                          _____
                                            DENNIS M. COTA
14                                          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28